# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MANUELA CIBRIAN-LOPEZ, <br><br> Defendant. | Case No. 18-CR-4002-MWB <br><br> **REPORT AND RECOMMENDATION** |

_____

Defendant Manuela Cibrian-Lopez moves to suppress statements she made to officers after her arrest, arguing that she did not validly waive her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Doc. 25. Although officers read Cibrian-Lopez her *Miranda* rights in English, and later, provided a written version of her *Miranda* rights in Spanish, Cibrian-Lopez argues that she did not sufficiently understand these warnings, as she speaks only broken English, and the United States (the Government) cannot establish she is literate in Spanish, her native language. The Government resists. Doc. 26.

I held a hearing on the motion on April 27, 2018. Doc. 64. The Government presented testimony from Deputy Michael Simoni, Deputy Justin Degroot, and Lieutenant Todd Trobaugh, all of the Woodbury County Sheriff's Office; and from Officer Cindy Martinez of the Tri-State Drug Task Force. The Government also submitted (and I admitted) the following exhibits:

- Ex. 1 – police report including narratives from multiple officers (under seal) (Doc. 29)
- Ex. 2 – video from Deputy Simoni's dashboard camera

- Ex. 3 to 5, 8 – video from Deputy Simoni's body camera
- Ex. 6 to 7 – video from Deputy Degroot's body camera
- Ex. 9 – Spanish warning provided to Cibrian-Lopez (Doc. 26-1)
- Ex. 10 – Lieutenant Trobaugh's police report (under seal) (Doc. 29-1)
- Ex. 11 – translation of Spanish warning by Piet J. Koene and supporting declaration (Doc. 26-2)
- Ex. 12 – March 24, 2018, letter from Cibrian-Lopez (under seal) (Doc. 63-1)
- Ex. 13 – March 27, 2018, letter from Cibrian-Lopez (under seal) (Doc. 63-2)
- Ex. 14 – Officer Martinez's police report regarding Cibrian-Lopez's jailhouse calls (under seal) (Doc. 63-3)
- Ex. 15 – Officer Martinez's police report regarding March 27, 2018, letter (under seal) (Doc. 63-4)
- Ex. 16 – September 2017 police report from California regarding child abuse allegations against Cibrian-Lopez (under seal) (Doc. 63-5)

Because I find Cibrian-Lopez's English proficiency sufficient to demonstrate that she knowingly and intelligently waived her *Miranda* rights, I recommend **denying** the motion to suppress (Doc. 25).

## I. BACKGROUND

While on patrol the evening of December 24, 2017, Deputy Simoni initiated a traffic stop of a vehicle traveling 84 miles per hour in a 70 mile per hour zone. The vehicle pulled to the side of the highway, and Deputy Simoni approached the passenger side window. The window rolled down to reveal a woman wearing a fur coat in the passenger seat, Cibrian-Lopez, and a man in the driver's seat, Guillermo Avalos-Valdes.

Deputy Simoni informed them that he had pulled them over for speeding, and when the man did not immediately respond, Cibrian-Lopez spoke to him in Spanish, which Deputy Simoni took to be Cibrian-Lopez translating what he had said to the driver.

2

Although Deputy Simoni speaks little Spanish, he asked for the driver's *licencia*, using (or attempting to use) the Spanish word for license, and both Cibrian-Lopez and Avalos-Valdes said something about driving (precisely what is unclear from the video). Ex. 3, 0:58-1:09. Deputy Simoni asked again if the driver had a license (this time abandoning the attempt to use Spanish), and Cibrian-Lopez immediately responded, "no, he don't." Deputy Simoni asked for registration and insurance, and Cibrian-Lopez began digging around in the car for these items. She handed Deputy Simoni the vehicle's registration information. After he looked at it, she asked whether he also needed the insurance, handing it over when he responded affirmatively. Deputy Simoni then asked whether anyone else was in the car (no), where they were coming from (California), and where they were headed (visiting friends), all of which were answered in accented English by Cibrian-Lopez without hesitation.

Throughout this encounter, Deputy Simoni smelled the strong odor of marijuana. So he asked, "How much weed do you guys have in here? Marijuana?" Cibrian-Lopez responded, "Huh?" and then began digging through the center console as if looking for something. Deputy Simoni asked if they had smoked it all, and Cibrian-Lopez said they had smoked in a parking lot. Deputy Simoni told Cibrian-Lopez that he needed them to step out so that he could search the car, and he asked her to explain that in Spanish to Avalos-Valdes (which she appeared to do before getting out of the car). Deputy Simoni directed Cibrian-Lopez to sit in his patrol car to stay warm, and while she was walking toward the car, he asked her if she had any weapons hidden underneath her coat. She immediately lifted her fur coat to show him that she did not.

Officers searched the car and discovered a firearm under the passenger seat and 180 pounds of marijuana. Deputy Simoni placed Cibrian-Lopez under arrest and quickly recited her *Miranda* rights in English. He asked whether she understood, and she said, "yeah." He proceeded to ask her questions in English about their travel plans and about the gun. As she had earlier, Cibrian-Lopez seemingly understood his questions and

3

answered appropriately (incriminating herself), although she did use the wrong syntax at least once ("Who I taking to?").

Officers took Cibrian-Lopez to the Woodbury County Law Enforcement Center to be interviewed. Once seated in a room there, Deputy Simoni asked Cibrian-Lopez if she remembered the rights he had read to her previously. She stared blankly at him. Deputy Simoni reminded her by reciting the *Miranda* warning quickly again and asking if she understood. She said she did not. He asked what she did not understand, and she said, "Because my English is not good." Deputy Simoni then told her (much more slowly this time) that she had the right to remain silent. He asked if she understood, and she did not respond. At this point, Deputy Degroot left the interview room to find a copy of the *Miranda* warning in Spanish, while Deputy Simoni tried to find a Spanish-language *Miranda* warning on his phone. Once Deputy Simoni found a *Miranda* warning in Spanish, he gave his phone to Cibrian-Lopez and asked her to read it (later, Deputy Degroot came back with a paper version that was identical). *See* Doc. 26-1. After she appeared to have read the Spanish-language *Miranda* warning on his phone, Deputy Simoni asked Cibrian-Lopez if she understood, and she said she did. Deputy Simoni did not ask Cibrian-Lopez to read the warning out loud or otherwise demonstrate that she had read it.

Deputies Simoni and Degroot proceeded to interrogate Cibrian-Lopez in English. Later, Lieutenant Trobaugh interrogated her further (with Deputy Simoni present). During these interviews, Cibrian-Lopez was able to answer the officers' questions in English, although she occasionally needed them to rephrase a question so that she could understand. She also answered a few questions in a manner that indicated she had not understood the question due to the language barrier. For example, when Lieutenant Trobaugh asked when they had left California, she responded, Atwater (the place they had left from), and he had to ask again when they had left. When he asked how many stops they had made, she thought about it for a while and then represented that she did

4

not know the English word for the day in the middle. After Deputy Simoni listed the days in English—Monday, Tuesday, Wednesday—Cibrian-Lopez said, Wednesday. Overall, however, the officers testified that Cibrian-Lopez communicated in English effectively enough that they did not believe they needed an interpreter to interview her.

During the interviews, Cibrian-Lopez agreed to show Deputy Simoni her cell phone, which utilized Spanish settings. At Deputy Simoni's request, she showed him how to change the settings from Spanish to English. The text messages on her phone were also in Spanish. When Lieutenant Trobaugh showed her some of the text messages and asked her what they said, Cibrian-Lopez explained.

On January 25, 2018, a federal grand jury issued an indictment charging Cibrian-Lopez with two counts, possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (a)(2). Cibrian-Lopez now moves to suppress the statements she made to Deputy Simoni after he gave her an oral *Miranda* warning in English at the scene of the traffic stop, as well as the statements she made during the interviews at the Woodbury County Law Enforcement Center after being shown a written Spanish-language version of the *Miranda* warning. The parties agree that Cibrian-Lopez was subject to custodial interrogation and dispute only whether she validly waived her *Miranda* rights.

## II. DISCUSSION

Under *Miranda*, a suspect subject to custodial interrogation must first be advised "that [s]he has the right to remain silent, that anything [s]he says can be used against h[er] in a court of law, that [s]he has the right to the presence of an attorney, and that if [s]he cannot afford an attorney one will be appointed for h[er] prior to any questioning if [s]he so desires." 384 U.S. at 479. The suspect must waive these rights before the interrogation can proceed. *Id*. A valid *Miranda* waiver must be knowing, intelligent,

5

and voluntary. *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011). For a waiver to be knowing and intelligent, "the suspect must have waived h[er] rights 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). For a *Miranda* waiver to be voluntary, it must be "the product of a free and deliberate choice[,] rather than intimidation, coercion, or deception." *Id.* (quoting *Moran*, 475 U.S. at 421). The government bears the burden of proof to show waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 167-68 (1986).

Cibrian-Lopez argues that due to her limited English proficiency, she did not knowingly and intelligently waive her *Miranda* rights when she responded to Deputy Simoni's questions at the scene of the traffic stop, because she did not understand the *Miranda* rights that Deputy Simoni recited to her in English. Cibrian-Lopez's primary language is Spanish. Although the video evidence and testimony demonstrate she was able to effectively communicate with officers in English, she is not fluent: officers had to rephrase some questions so that Cibrian-Lopez would understand; Cibrian-Lopez occasionally used the wrong syntax when answering questions and could not think of how to say "Wednesday" in English; and she answered a few questions in an illogical manner, suggesting that she had not understood the question. Cibrian-Lopez responded to the bulk of the questions, however, without hesitation and with answers (beyond a mere yes or no) indicating she understood.

Eighth Circuit cases addressing whether a language barrier prevented a defendant from knowingly and voluntarily waiving her *Miranda* rights involve defendants who spoke better English than Cibrian-Lopez. *See United States v. Marquez*, 605 F.3d 604, 608-09 (8th Cir. 2010) (officers had "no difficulty" communicating with the defendant in English, and his girlfriend testified that he "spoke 'conversational [E]nglish' and that she could communicate with him in English '[m]ost of the time'" (alterations in original)); *United States v. Marrero*, 152 F.3d 1030, 1034 (8th Cir. 1998) (defendant spoke English

6

and never "indicated difficulty with the English language"). In a case involving consent to search a home, however, the Eighth Circuit held that it was "unpersuaded . . . that a language barrier prevented [the defendant] from consenting voluntarily," noting that "the bulk of the [officers' post-arrest] interrogation was conducted in English" and that the defendant "effectively communicated with [officers] in English," responding to most questions "articulately and without hesitation," although he did have difficulty understanding a few words and had to ask for clarification from a Spanish interpreter. *United States v. Contreras*, 372 F.3d 974, 977-78 (8th Cir. 2004); *see also United States v. Perez*, 200 F.3d 576, 578 (8th Cir. 2000) (holding that defendant's limited English proficiency did not interfere with his ability to give knowing consent to search his vehicle; although it was "obvious" English was not the defendant's first language, he responded to officer in English in a manner that indicated he understood the questions).

Here, I am most concerned by the fact that Deputy Simoni recited the *Miranda* warning to Cibrian-Lopez extremely quickly. I also note that he asked whether she understood (and she said "yeah"), but not whether she wished to waive her rights or to speak to him (which is not required but would further evince a true understanding). And later, at the Woodbury County Law Enforcement Center, when Deputy Simoni asked Cibrian-Lopez whether she remembered her rights from earlier, she looked confused. She appeared not to understand even when he told her (slowly) she had the right to remain silent. When Deputy Simoni inquired about what needed more explanation, she said, "Because my English is not good." I find the issue whether Cibrian-Lopez knowingly and intelligently waived her *Miranda* rights at the scene of the traffic stop to be a close issue. *Compare United States v. Gonzalez-Noyola*, No. 8:05CR274, 2006 WL 1288679, at *2-3, *5-6 (D. Neb. May 9, 2006) (holding that defendant validly waived his *Miranda* rights when the officer read each right to him in English, and the defendant responded affirmatively that he understood "in 'somewhat broken' English"; and a Spanish-speaking officer on the scene did not come to talk to the defendant immediately because he thought

7

the defendant "communicat[ed] effectively" in English during the ten to fifteen minute interrogation), *report and recommendation adopted*, 2006 WL 1559661 (D. Neb. June 5, 2006), *and United States v. Mandujano*, No. CR. 03-178(2)JRTFLN, 2003 WL 22076577, at *2-3 (D. Minn. Aug. 22, 2003) (holding that defendant validly waived his *Miranda* rights when he indicated he understood after an officer read each right separately in English; he was not asked whether he wanted to waive his rights; he stated he understood English; he answered questions responsively and without struggling, although "at times officers clarified (or simplified) questions by using slightly different language"; and later, when an officer spoke to the defendant in Spanish, the defendant responded in English, so the officer switched to English), *with United States v. Prado*, No. 3:15-CR-151, 2017 WL 1653957, at *9-10 (M.D. Pa. May 1, 2017) (holding that defendant did not knowingly waive *Miranda* rights read quickly to him on the side of the road when he never clearly said he understood, as he answered yeah in response to a compound question about understanding and being there a long time; he said "okay" in response to being told a Spanish-speaking officer could explain his rights; and although he "sp[oke] and underst[oo]d some English," he had trouble understanding "from time to time," and the officer had to repeat or slow down his questions), *and United States v. Perez*, No. CR96-4030, 1996 WL 33425407, at *1 (N.D. Iowa Nov. 4, 1996) (holding that the defendant did not understand his *Miranda* rights when they were read quickly to him in English after he indicated he had some problems communicating in English; he expressed some confusion when initially asked whether he understood his rights, and after they were further explained, he signed a form in English indicating he understood his rights; he was not asked whether he wished to waive his rights; and he spoke "broken English" but answered most questions quickly and all questions responsively), *report and recommendation found moot*, Docket No. 60, No. 96-CR-4030 (N.D. Iowa Feb. 8, 1997). Ultimately, however, I find that Cibrian-Lopez was sufficiently proficient in English to knowingly and intelligently waive her *Miranda* rights, as she indicated she

8

understood at the scene of the traffic stop, and she answered most questions quickly and responsively.

Even if I were to find otherwise, I would not recommend suppressing Cibrian-Lopez's later statements made during interviews at the Woodbury County Law Enforcement Center. As Cibrian-Lopez recognizes, "[w]arned statements elicited after an initial *Miranda* violation may be admissible, so long as officers d[id] not purposefully elicit an unwarned confession from a suspect in an effort to circumvent *Miranda* requirements." *United States v. Morgan*, 729 F.3d 1086, 1091-92 (8th Cir. 2013); *see also Prado*, 2017 WL 1653957, at *9-10, *11 n.7. Here, there is no evidence of purposefulness: Deputy Simoni warned Cibrian-Lopez of her *Miranda* rights quickly and in English at a time when there had not yet been any indication that Cibrian-Lopez had difficulty understanding or communicating in English.

Before officers interrogated Cibrian-Lopez in the interview room, Deputy Simoni showed Cibrian-Lopez a Spanish-language written version of the *Miranda* rights on his phone. The translation was far from perfect: it did not use accent marks, which "is considered equivalent to [a] spelling mistake[] and . . . . hinder[s] comprehension"; it used the informal word for you, which is "generally used for acquaintances and friends, people of the same age or younger than the speaker, or to indicate a lack of respect"; it misspelled the word for attorney; and it used the "Spanglish" word for court that actually translates to "royal court" or "Spanish Parliament," but that "would likely be understood by a speaker of Spanish who has resided for a time in the [United States]." Doc. 26-2. Nevertheless, Cibrian-Lopez appeared to read the rights, and she said she understood. To further prove that Cibrian-Lopez can read Spanish, the Government points to Spanish-language text messages on Cibrian-Lopez's cell phone, her general ability to use her phone with Spanish-language settings, and two letters Cibrian-Lopez has written in Spanish (although Officer Martinez testified that they contain some spelling and grammatical mistakes). *See* Docs. 63-1, 63-2. I find this evidence is sufficient to

9

demonstrate that Cibrian-Lopez understood the written Spanish-language *Miranda* warning and knowingly and intelligently waived her *Miranda* rights.

In addition, at the hearing, Cibrian-Lopez argued that her marijuana consumption earlier in the night demonstrated that her *Miranda* waiver was not voluntary. She pointed to evidence that when Deputy Simoni asked whether there was marijuana in the car, Cibrian-Lopez said she had smoked marijuana in a parking lot earlier, and that Lieutenant Trobaugh testified that when he interviewed Cibrian-Lopez, she was relaxed and carefree, which he admitted could be a sign of marijuana usage. Although "drug use [is] relevant to" whether a defendant has validly waived her *Miranda* rights, "'[i]ntoxication . . . do[es] not automatically render a confession involuntary.'" *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (second alteration in original) (quoting *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990)). After reviewing the videos of the interrogations, Cibrian-Lopez did not seem impaired during the interrogations, and certainly "not so impaired that h[er] will was overborne or [s]he was unable to make a knowing, voluntary, and intelligent waiver of h[er] rights." *United States v. Martinez-Rodriguez*, No. CR10-4063-DEO, 2010 WL 4439645, at *3 (N.D. Iowa Nov. 1, 2010), *report and recommendation adopted*, 2010 WL 5055928 (N.D. Iowa Dec. 3, 2010). Thus, I recommend finding that any marijuana consumption by Cibrian Lopez earlier in the night did not render her *Miranda* waiver involuntary.

### III. CONCLUSION

I respectfully recommend that the district court **deny** Defendant's motion to suppress evidence (Doc. 25).

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after

service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections. LCrR 59. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

    **ENTERED** this 25th day of May, 2018.

*[signature]*
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa